STATE OF CONNECTICUT *v.* HAROLD HOLLOWAY
(7798)

BORDEN, O'CONNELL and FOTI, Js.

Argued April 11—decision released May 18, 1990

*William F. Gallagher,* special public defender, with whom, on the brief, was *Robert P. Borquez,* special public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* senior assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a court trial, of the lesser included offense[1] of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[2] He claims that the trial court should not have (1) excluded the testimony of a forensic expert witness given in response to a hypothetical question, (2) admitted the testimony of the same witness in response to a question by the state on cross-examination, (3) denied his motion for articulation, and (4) found him guilty based on the evidence presented. We affirm the judgment of the trial court.

In its memorandum of decision, the court found the following facts. At approximately 2 a.m. on May 16, 1987, the defendant, Harold Holloway, and the victim, Shirley Holloway,[3] were together in the vicinity of the Keney Grill in Hartford. They were arguing, and the

---

[1] The defendant was charged with the crime of murder and elected to be tried by a three judge panel. See General Statutes § 54-82 (b).

[2] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] The victim and the defendant were not related.

defendant exerted some degree of physical force on the victim. The victim said "Stop, leave me alone," and the defendant replied, "Shut up or I'll kill you." The court further found, on the basis of the testimony of Iris Santiago, a state's witness, that between 3:30 and 4 a.m. Santiago heard and saw the defendant and the victim arguing in the vicinity of an after-hours bar on Main Street across the street from Santiago's home. The defendant was holding the victim in a headlock as he punched her in the face. Shortly thereafter, the victim screamed, "No, Harold, please Harold, no, Harold." The court also found that later Santiago, having heard a loud scream, looked out of her window and saw the defendant carrying the victim's limp body into an alley between a market and a laundromat. At approximately 6:30 a.m., the victim's body was found in a vacant lot at the end of that alley. The court concluded that the defendant had committed manslaughter.

Although not referred to in the court's decision, there was the following uncontroverted evidence. When the victim was found, she was lying on her back, naked from the waist down with her shirt and bra pulled up exposing her breasts. Her eyes were swollen, and her lips and neck were bruised. There was dried semen on her abdomen and pubic area, and blood stains on the left front part of her chest, at the junction of her right hip and abdomen, on the back of her left hand and on the inside of her left thigh. The semen and blood contained type A blood substances. There was also undisputed evidence that both the victim and the defendant had blood type O.

Wayne Carver, the state medical examiner, testified that the victim died on May 16 between 1 and 5 a.m. He also testified that the cause of death was manual strangulation, and that the blood stains had been

deposited on the victim's body "about the time [when] she stopped moving, and certainly not more than a couple hours of active lifetime before she died."

I

The defendant first claims that the court should not have sustained the state's objection to a hypothetical question asked of an expert defense witness. This claim arises out of the following context.

Medical records were introduced establishing that the defendant had blood type O. Beryl Novitch, a criminalist with the state forensic laboratory,[4] testified for the defendant. She testified that she examined the semen and blood samples taken from the victim's body, that the victim had blood type O, and that both the semen and blood samples contained type A blood substances. She also testified that blood and semen samples came from a secreter, that is, one of the 80 percent of the population that secretes blood group substances into other body fluids, such as semen. Novitch, having been asked to assume that the semen stain came from one person, testified that it was consistent with having been deposited by a person with type A blood. She also testified that the victim was a secreter.

The defendant then asked Novitch the following hypothetical question: "Assuming that the blood type of the victim is an O *and assuming that there is only one person involved in an incident with the victim,* do you have an opinion with reasonable medical certainty of the blood type of the person that left the stain on the victim's body and semenal fluid on the victim's body?" (Emphasis added.) The court sustained the state's objection, presumably on the ground that the question assumed facts not in evidence, namely, that

---

[4] A criminalist is one who scientifically examines evidence brought to the laboratory by police and other agencies for use in court.

only one person was involved in the incident causing the victim's death.[5] The defendant excepted to the ruling.

The defendant argues that there was sufficient evidence to support the hypothesis stated in the question that only one person was involved in causing the victim's death, and that, therefore, the court should not have sustained the objection. We agree, but we conclude that the ruling was harmless.

Whether a hypothetical question is admissible is within the sound discretion of the court. *State* v. *Hardwick,* 1 Conn. App. 609, 617, 475 A.2d 315, cert. denied, 193 Conn. 804, 476 A.2d 145 (1984). It may be admissible within that discretion, even if it does not contain all the facts in evidence, as long as it presents those facts truly and fairly to each other and to the rest of the evidence, it is not worded so as to mislead or confuse the factfinder, and it is not as lacking in facts as to be without value to the decision in the case. Id; see also *State* v. *D'Ambrosio,* 14 Conn. App. 309, 319–20, 541 A.2d 880 (1988), rev'd in part on other grounds, 212 Conn. 50, 561 A.2d 422 (1989). The court's ruling will not be disturbed unless its discretion has been abused, or the error is clear and stems from a misconception of the law. *State* v. *Palmer,* 196 Conn. 157, 166, 491 A.2d 1075 (1985). Under the circumstances of this case, we conclude that the court abused its discretion in excluding the question.

Although there was no evidence that directly precluded the participation of more than one person in the victim's death, there was sufficient evidence to permit the inference that only one person was involved. San-

---

[5] In sustaining the objection, the court stated: "You can't assume the nature of your question. That . . . creates a problem." Although the basis of the court's ruling is not quite clear from this record, the parties on appeal have treated it as stated in the text. We, therefore, do so as well.

tiago testified that between 3:30 and 4 a.m. she saw and heard the defendant and the victim arguing, that the defendant had the victim in a headlock and was punching her in the face with his fist, and that she heard the victim scream the defendant's name. Santiago also testified that later she heard a loud scream and saw the defendant carrying the victim's limp body into the alley. Carver's testimony put the time of death at no later than 5 a.m. There also was evidence that between 1:30 and 2 a.m., the defendant and the victim left the Keney Grill, at which time the defendant had physically abused her and had threatened to kill her. Aside from the forensic evidence yielded by the semen and blood stains, there was no evidence of any other person's involvement in the victim's death. Furthermore, the defendant's theory of defense was that someone else hit the victim and carried her limp body into the alley. He testified that he was not in the vicinity of the Keney Grill that evening, and that he was at home at the time of the victim's death.

Under these circumstances, the court should have permitted Novitch to respond to the question. The question presented facts and evidence in accurate relation to each other and to the rest of the evidence, it was not worded in a misleading or confusing manner, and the assumption that only one person was involved in the victim's death was sufficiently rooted in the evidence to afford some value to the court as factfinder. See *State* v. *Hardwick, supra,* 617.

The state argues that the court's ruling was correct because Novitch's testimony itself, by tending to indicate the involvement of someone in addition to the defendant, belied the assumption that there was only one criminal actor, as was stated in the question. The state incorrectly limits the reasonable inferences that can be drawn from Novitch's testimony. We view her testimony as indicating at least three permissible

scenarios accounting for the presence of the semen and blood on the victim's body. First, there was someone else, in addition to the defendant, involved in the victim's death; second, as the defendant argues, someone else other than the defendant was responsible for the victim's death, and the identification of the defendant by Santiago and the other witnesses must have been flawed; and, third, someone other than the defendant deposited the semen and blood on the victim's body after it was left in or near the alley. Under the facts of this case, the defendant was entitled to have Novitch give her opinion based on the defendant's theory of the case.

We conclude, however, that this ruling was harmless because we are unpersuaded that the exclusion of this evidence probably affected the decision. *State* v. *Moody,* 214 Conn. 616, 629, 573 A.2d 716 (1990); *State* v. *Horton,* 8 Conn. App. 376, 381–82, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986). Prior to the excluded question, Novitch, who had been asked to assume that the semen came from one person, had already testified that that person had type A blood. Furthermore, after the question was excluded, Novitch testified without objection that "[i]f this [blood] was just deposited by one person . . . it could not be deposited by an . . . O person. On the seminal stain, if it was a seminal stain deposited by one person . . . it would not be deposited by . . . an O secreter or a non-secreter." Thus, the substance of the testimony sought by the excluded hypothetical question was received into evidence.

## II

The defendant next claims that the court should not have overruled his objection to a question asked by the state on its cross-examination of Novitch. We disagree.

The state asked Novitch the following question: "[T]he results that you received from your testing on the seminal stains does not exclude . . . combined donations by an A secreter and an O secreter, does it?" The defendant objected on the bases that there was no evidence that more than one person was involved, and that the question called for speculation. The court overruled the objection, and the defendant excepted.

This question was proper cross-examination of Novitch because she had testified on direct examination that if one person had deposited the seminal fluid, he could not be an O secreter. Thus, the question was a proper method of challenging one of the permissible inferences from her direct examination, namely, that some person other than the defendant killed the victim. Furthermore, Novitch's testimony on direct examination, taken together with the eyewitness testimony implicating the defendant, could have also permitted the inference that more than one person was responsible for the victim's death. Thus, this question was not based on speculation, but was based on evidence in the case.

## III

The defendant next claims that the court should have granted his motion for articulation regarding the effect of certain evidence on the court's factfinding process. We first consider a procedural question that has not been authoritatively determined by either this court or the Supreme Court: May an appellant, after the denial by the trial court of his motion for articulation pursuant to Practice Book § 4051,[6] and after review of that

---

[6] Practice Book § 4051 provides: "A motion for rectification or articulation shall be filed in triplicate with the chief clerk of the supreme court and forwarded by such clerk to the trial judge. The trial judge shall file the ruling on the motion with the chief clerk of the supreme court.

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articula-

denial by this court pursuant to Practice Book § 4054,[7] present the same issue to this court on the merits of the appeal as a claimed ground for reversing the trial court? We conclude that the ruling of the trial court on a defendant's motion for articulation pursuant to Practice Book § 4051 does not ordinarily provide the basis of a claim on appeal. Moreover, we conclude that, in this case, the trial court acted properly in denying the motion for articulation.

After the court rendered judgment, and while the case was on appeal, the defendant moved for an articulation of the following matters: (1) Did the panel find credible the forensic evidence regarding the victim's

tion or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made. The trial court may make such corrections or additions as are necessary for the proper presentation of the preliminary statement of issues or for the proper presentation of questions reserved; or the trial court may approve a stipulation of counsel that such a correction or addition be made, provided the motion or stipulation is presented before the appeal is ready to be assigned for hearing and only by leave of the supreme court thereafter. The action of the trial judge as regards such a correction or addition may be reviewed by the supreme court under Sec. 4054. Nothing herein is intended to affect the existing practice with respect to opening and correcting judgments and the records on which they are based.

"Corrections made before the record is printed shall be included in it. If the record has been printed, the chief justice may direct the chief clerk of the supreme court to prepare a supplemental printed record, to be printed and distributed in the same way as the original printed record, but in the absence of such a direction the chief clerk of the supreme court shall furnish the justices of the supreme court typewritten copies."

[7] Practice Book § 4054 provides: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may make a written motion for review to the supreme court, to be filed with the chief clerk of the supreme court, and the supreme court may, upon such a motion, direct any action it deems proper. If the motion depends upon a transcript of evidence or proceedings taken by a court reporter, the procedure set forth in Sec. 4053 shall be followed. Corrections which the supreme court makes or orders made pursuant hereto shall be included in the printed record or a supplemental record in the same way in which, under Sec. 4051, corrections made by the trial judge are included."

and the defendant's blood types, and the source of the semen and blood found on the victim's body? (2) If so, was there any relationship between that evidence and the defendant's guilt? and (3) If there was no such relationship, on what did the court base its conclusion?

After the trial court denied the motion, the defendant moved, pursuant to Practice Book § 4054, for review of the trial court's denial. This court granted the motion for review but denied the relief requested.

Practice Book § 4051 provides for a motion for "articulation or further articulation of the decision of the trial court . . . ." The purpose of such a motion is to clarify an ambiguity or incompleteness in the decision of the trial court. *State* v. *Wilson,* 199 Conn. 417, 434, 513 A.2d 620 (1986). It is appropriate, for example, where the factual or legal basis of the trial court's decision is unclear or has been omitted entirely, where the reviewing court cannot discern whether the decision was based on a factual finding or on a particular construction of a statute, where the meaning of an ambiguous phrase used by the trial court is unclear, where it is unclear whether the trial court considered the applicable statutory criteria, and where the appellant claims that the facts found were not supported by the evidence. Id., 434–35.

"The circumstances are indeed diverse where an articulation may be necessary or useful for meaningful appellate review. Broad diversity, however, does not imply an abrogation of standards. An articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification." Id., 435. A trial court's later articulation cannot, however, be used to contradict its earlier factual findings. Id., 436.

Appellate consideration of the action of the trial court pursuant to such a motion is provided by a motion for

review pursuant to Practice Book § 4054. "The action of the trial judge as regards such a correction or addition may be reviewed by the supreme court [or the appellate court; see Practice Book § 2000] under Sec. 4054." Practice Book § 4051. "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may make a written motion for review to the supreme court, to be filed with the chief clerk of the supreme court, and the supreme court may, upon such a motion, direct any action it deems proper." Practice Book § 4054.

In *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.,* 18 Conn. App. 559, 568, 559 A.2d 241 (1989), which presented a closely analogous situation, we declined to consider a claim that the trial court should not have denied the defendant's motion for a special finding under General Statutes § 52-226. The basis for that decision was that the defendant's argument had "already received adequate review" by way of its motion for review in this court. Id. In contrast, our Supreme Court in *State* v. *Wilson,* supra, 438, did consider the defendant's claim because the court had earlier denied its motion for review "without prejudice, subject to its renewal on appeal."

Although the language of Practice Book § 4054 is not as definitive as that of § 4049 ("[t]he sole remedy of any party desiring the supreme court to review an order concerning a stay of execution shall be by motion for review under Sec. 4053"), we believe that the same policy applies to Practice Book § 4054. To hold otherwise would mean that a defendant, having unsuccessfully sought review by this court of a trial court's ruling on a motion for articulation, could thereafter present the same issue to this court on the merits of the appeal. We would then be providing two appellate reviews of the same issue. We are unaware of any other provi-

sion of our rules for such double review, and we see no reason to construe the rules to provide for such review of the issue of the clarity or completeness of the trial court's decision, an issue that is ordinarily subsidiary to the substance of that decision.

This does not mean, however, that a decision regarding review under Practice Book § 4054 is irrevocable. We are, of course, free to make that decision without prejudice to its renewal on the merits of the appeal. See *State* v. *Wilson,* supra. We are also free to reexamine that decision sua sponte when plenary review of the case on the merits of the appeal discloses that our earlier decision was ill considered, and that further articulation is necessary for the just determination of the appeal. Cf. *Rostain* v. *Rostain,* 213 Conn. 686, 694–95, 569 A.2d 1126 (1990) (sua sponte remand for articulation).

We conclude that no such necessity exists here. The trial court clearly stated the essential facts that it found and the application of the law to those facts. Furthermore, although the circumstances are diverse where further articulation may be necessary for appellate review; *State* v. *Wilson,* supra, 435; even those circumstances have limits. In this case, the trial court not only fully stated its factual findings, but also referred to the evidence it found credible to support those findings. The just resolution of this appeal did not require it to go further by delineating the effect of the defendant's arguably exculpatory forensic evidence on its decision.

IV

The defendant's final claim is that the court should not have found him guilty because that finding was clearly contrary to all the evidence. The defendant does not argue that the facts that the trial court did find were not supported by sufficient evidence to sustain

those facts. Rather, the defendant argues that (1) if the court disbelieved Novitch's testimony, that disbelief was unwarranted because there was no contrary evidence, and (2) if the court believed Novitch's testimony, it must have speculated regarding what happened to the victim's body after the victim died, and that speculation was inconsistent with Carver's testimony that the blood stains were deposited on the victim at the time of or two hours before her death. We are unpersuaded.[8]

Carver's opinion that the blood on the victim's wrist was deposited at the time of her death was based on his observation of the blood on her body when he first saw it and on his "knowledge of what blood is like when people are walking around doing things." The court was not compelled to accept this opinion, even though the state did not attempt to rebut it. If it was not accepted, the inference was permissible that the blood and semen were deposited on the victim's body by someone else, at the time the defendant left her body in or near the alley, or some time thereafter, before her body was discovered.

We turn, then, to the defendant's argument that the court was bound to accept Novitch's testimony because it was uncontradicted, and because the state did not attempt to impeach her qualifications as an expert. Implicit in this argument, however, is the related notion that the trial court was required to accept Carver's testimony that the blood was deposited on the victim's body at the time of her death or within two hours prior

---

[8] We note that this is not a case where the factfinder has apparently rejected undisputed, generally accepted scientific evidence, as opposed to expert opinion that does not rise to that level, that would, if believed, necessarily preclude a finding of guilt. Recent cases of that nature, involving the weight to be accorded blood grouping tests in paternity cases, have yielded a range of appellate response. See, e.g., annot., 43 A.L.R. 4th 579, §§ 8 through 16, and (Sup. 1989) 579, §§ 3 through 16.

thereto, because the defendant's argument, namely, that the difference in blood types must have rationally excluded the defendant as the killer, necessarily depends on the related idea that whoever strangled the victim deposited the blood and semen on her body at or near the time of her death.

The defendant relies on *Builders Service Corporation* v. *Planning & Zoning Commission,* 208 Conn. 267, 294, 545 A.2d 530 (1988), where our Supreme Court, in a 3-2 decision, held that the trial court was required to accept an expert's testimony in the absence of contradictory evidence or impeachment of his testimony on cross-examination. The court stated that "[a] trial court cannot . . . arbitrarily disregard, disbelieve or reject an expert's testimony in the first instance. *Rock Creek Plaza - Woodner Ltd.* v. *District of Columbia,* 466 A.2d 857, 859 (D.C. App. 1983). There are times, as the First Circuit Court of Appeals said in *Santana* v. *United States,* 572 A.2d 331, 335 (1st Cir. 1977), that 'the trial judge, despite his superior vantage point, has erred in his assessment of the testimony.' We, as did the court in *Santana,* 'think this is one of those rare cases.' Id. Where the trial court rejects the testimony of a plaintiff's expert, 'there must be some basis in the record to support the conclusion "that the evidence of the [expert witness] is unworthy of belief.' " *Rock Creek Plaza - Woodner Ltd.* v. *District of Columbia,* supra; *Cullers* v. *Commissioner,* 237 F.2d 611, 616 (8th Cir. 1956)." *Builders Service Corporation* v. *Planning & Zoning Commission,* supra. We do not believe that *Builders Service* applies here.

First, *Builders Service* simply cannot be read to have implicitly overruled the well settled principle that a factfinder "is under no obligation to credit the evidence proffered by any witnesses, including experts; *Johnson* v. *Healy,* 183 Conn. 514, 516–17, 440 A.2d 765 (1981);

*Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981); even if that evidence is uncontroverted. *Pisel* v. *Stamford Hospital,* [180 Conn. 314, 344, 430 A.2d 1 (1980)]. '[T]he acceptance or rejection of an opinion of a qualified expert is a matter for the trier of fact unless the opinion is so unreasonable as to be unacceptable to a rational mind.' *National Folding Box Co.* v. *New Haven,* 46 Conn. 578, 586, 153 A.2d 420 (1959)." *Mather* v. *Griffin Hospital,* 207 Conn. 125, 145, 540 A.2d 666 (1988); see also *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), aff'd, 188 Conn. 626, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *Pischitto* v. *Waldron,* 147 Conn. 171, 177, 158 A.2d 168 (1960); *State* v. *Kelly,* 77 Conn. 266, 275, 58 A. 705 (1904); *Bricklin* v. *Stengol Corporation,* 1 Conn. App. 656, 665, 476 A.2d 584, cert. denied, 194 Conn. 803, 482 A.2d 709 (1984). The majority in *Builders Service Corporation* did not explain why that was one of those rare cases where the trial court was incorrect in its assessment of the expert testimony, other than to say that the court did not specifically refer in its memorandum of decision to the expert's testimony. Until the contours and limits of *Builders Service Corporation* are more clearly defined, we hesitate to apply it beyond its facts.

Second, *Builders Service Corporation* is factually distinguishable. Unlike that case, here,the state's cross-examination of Novitch elicited testimony that her finding did not exclude combined semen donations by an A secreter and nonsecreter, or by an A secreter, an O secreter and a nonsecreter. Thus, the inference from Novitch's testimony, upon which the defendant relied, namely, that someone else had killed the victim, was undermined on cross-examination. This cross-examination permitted the inference that someone in

addition to the defendant was responsible for her death. Furthermore, although the court in its memorandum of decision did not specifically refer to the testimony of Novitch and Carver regarding the semen and blood stains, it did at the time of sentencing make clear that it had considered that testimony.

After the defendant, in his statements to the court at sentencing, denied ever having met the victim, and referred to the "semen and everything found at the scene," the court stated: "Alright, Mr. Holloway, as far as the remarks made by yourself and your attorney are concerned, the panel heard all of the evidence, *we heard whatever might be considered to be contradictory evidence presented by the various witnesses.* But the state must prove a case beyond a reasonable doubt. We found that the state did prove this case beyond a reasonable doubt. Although there may have been some minor inconsistencies, they were not of a nature that would change the verdict of this court—of this panel. *We took everything into consideration, discussed it very thoroughly.* When we entered our finding of guilty of manslaughter in the first degree, we were of the opinion that the actual death occurred at the time that you had this young lady by the—around the neck with your arm. We made that finding that it was at that particular moment this young lady was killed. We cannot speculate nor will we speculate as to what happened to that body after it was placed behind the dump truck. Something else may have happened, we don't know and we're not going to speculate about it and we don't speculate about it." (Emphasis added.)

Third, the testimony of Novitch was subject to at least three possible inferences, one inconsistent and two consistent with the defendant's guilt. Faced with this choice, and faced with more than ample other evidence of the defendant's guilt, the trial court was not required

to draw that inference inconsistent with guilt. *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985). Put another way, the court was not required to infer that the blood and semen were deposited on the victim's body by her killer at the time of her death. The state was required only to demonstrate the defendant's guilt beyond a reasonable doubt; it was not required to disprove any contact between the victim and a third person.

This reasoning also largely disposes of the second part of the defendant's argument, namely, that if the court believed Novitch's testimony, it must have speculated on what had happened to the victim's body after she died. The court, in its sentencing remarks, specifically disclaimed any such speculation. Furthermore, as we have indicated, the court was not required to accept Carver's opinion that the blood was deposited on the victim's body at the time of or shortly before her death.

In sum, to accept the defendant's argument that the decision was contrary to the evidence would require that we sit as a fourth panel member whose vote exceeds that of the three judges who heard the case. That we cannot do. *State* v. *Osman,* 21 Conn. App. 299, 303, 573 A.2d 743 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.