STATE OF CONNECTICUT *v.* ROGER BRUNORI
(7836)

DALY, LAVERY and LANDAU, Js.

Argued April 30—decision released July 24, 1990

*Neal Cone,* deputy assistant public defender, for the appellant (defendant).

*Paul J. Ferenecek,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, *Steven J. Sedensky III,* assistant state's attorney, and *Michael Granston,* legal intern, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, after a jury trial, of possession of drug paraphernalia in violation of General Statutes § 21a-267 (a), and possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The dispositive issue is whether the trial court properly denied the defendant's motion for judgment of acquittal.[1] We conclude that the evidence adduced at trial was insufficient as a matter of law to support the guilty verdicts. Accordingly, we reverse the trial court's judgment.

The jury could reasonably have found the following facts. On the afternoon of July 16, 1987, Officers Joseph Sherbo and Robert Craw of the Bridgeport police department were dispatched to building number two of the Father Panik Village housing project in response to a report of a man armed with a gun. As they were driving toward the area, the officers first observed the defendant and two other men standing

---

[1] Because of our resolution of this claim, we do not reach the defendant's other claims.

alongside that building. The three men saw the patrol car and went around the corner of the building, but were stopped by the officers a short distance from where they were initially observed. Sherbo, who was driving, had observed the defendant bend down with his arm stretched, come back up and then move back a few feet. The officers exited the vehicle and patted down the three individuals for weapons. Although no weapons were found, Craw did find two "folds" of a narcotic substance, which were later determined to contain cocaine, and a hypodermic needle in the proximate area where Sherbo had previously seen the defendant bend.

On appeal, the state argues that the jury could have made four reasonable inferences based on the evidence presented to find the defendant guilty.[2] First, the defendant was at Father Panik Village to buy drugs; second, Joseph Pirrelo, a person accompanying the defendant, warned him that the police were nearby; third, the defendant and his companions attempted to walk away from the scene inconspicuously to avoid detection; and fourth, the defendant bent down and placed the cocaine and hypodermic needle on the ground to disassociate himself from the incriminating evidence.

The defendant argues that, in the absence of any testimony that an officer actually saw him discard something, the jury had to resort to conjecture and speculation to connect him with the contraband. He

[2] At trial, the state advanced a far less intricate set of inferences in support of denying the defendant's motion for a judgment of acquittal. It argued that "[w]e had testimony from the police officers they had seen the defendant lean down as if dropping something. Also, the items were found in the area within two or three feet where the defendant was. Also, testimony that they don't normally find narcotics lying around unless someone dropped them. The State believes based on this evidence it should be allowed to go in to the jury."

contends that mere suspicious conduct in the vicinity of narcotics is not enough to establish criminal possession. The defendant relies on numerous cases from other jurisdictions involving situations in which the surrounding circumstances were found to be insufficient to indicate that the accused had constructive possession of contraband found in a public place. The common theme of these cases is that a defendant who was never observed placing or discarding the contraband in the location where it was later discovered cannot be found guilty of possession in the absence of other evidence that would tend to buttress such an inference.[3] We agree with the defendant.

It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we

[3] For example, in *People* v. *Evans,* 72 Ill. App. 146, 147–49, 218 N.E.2d 781 (1966), possession of narcotics found secreted under a public bar with chewing gum was not proved beyond a reasonable doubt where no one saw the defendant place it there. In *Evans,* the defendant rose from his seat at the bar and hurried toward the men's room. Further, an officer testified that the defendant offered him a bribe if he would not arrest him. Id., 147. The court, noting that the narcotics were found in a place that was easily accessible to any number of people and could have been put there by anyone at any time, concluded that constructive possession could not be shown in the defendant simply by his suspicious conduct. Id., 149. Similarly, in *Carroll* v. *State,* 90 Ariz. 411, 412–13, 368 P.2d 649 (1962), the defendant, who was seated on an airport bench, made a throwing motion on the approach of two police officers. There was no testimony that he threw any object. Drugs were later found in a balled-up rubber sheath behind the bench. The conviction for illegal possession was not sustained because the implications that the defendant threw something and that that something was narcotics was simply too frail to draw the requisite inference to sustain a possession conviction, namely, that the defendant knew of the existence of the found narcotic. See also *People* v. *Russell,* 34 N.Y.2d 261, 265, 357 N.Y.S.2d 415, 313 N.E.2d 732 (1974) (evidence insufficient to connect the defendant to an envelope containing narcotics that was found near curb where the defendant's car was parked, and where the defendant was seen making a motion with his right arm and hand prior to departure when officers neither observed the defendant with anything in his hand nor saw him drop an object); *In re Caldarone,* 345 A.2d 871, 876 (R.I. 1975) (presence at scene plus flight insufficient to infer possession of contraband where narcotics found at a clearing in the woods where the men had been).

defer to the jury. We do not sit as a seventh juror empowered to cast an overriding vote over the jury of six that actually heard the case. *State* v. *Holloway,* 22 Conn. App. 265, 281, 577 A.2d 1064 (1990). Rather, when faced with an insufficiency claim, we review the record to determine whether the jury could reasonably have found guilt beyond a reasonable doubt based on the cumulative effect of all the evidence presented at trial. *State* v. *Moody,* 214 Conn. 616, 573 A.2d 716 (1990); *State* v. *Osman,* 21 Conn. App. 299, 302–303, 573 A.2d 743 (1990). Our task is to review the evidence presented at trial, both established facts and inferences reasonably drawn from those facts, in the light most favorable to sustaining the verdict. *State* v. *Osman,* supra. We treat circumstantial evidence as having the same degree of probative force as direct evidence. Id.; see also *State* v. *Smith,* 212 Conn. 593, 599, 563 A.2d 671 (1989).

General Statutes § § 21a-267 (a)[4] and 21-279 (a)[5] require proof that the defendant *possessed* drug paraphernalia or a narcotic substance, respectively. Under § 21a-267 (a), the state must prove that the defendant possessed the drug paraphernalia with an intent to use it, while under § 22a-279 (a), possession of a narcotic substance, with an intent to use is of no import. Notwithstanding this distinction, to establish possession under either offense, the state must prove beyond a reasonable doubt that the defendant knew the

---

[4] General Statutes § 21a-267 (a) provides in pertinent part that "[n]o person shall . . . possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240 . . . to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240."

[5] General Statutes § 21a-279 (a) provides in pertinent part that "[a]ny person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter . . . may be imprisoned . . . ."

character of the contraband, knew of its presence and exercised dominion and control over it. *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Melillo,* 17 Conn. App. 114, 117–18, 550 A.2d 319 (1988). Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. See, e.g., *State* v. *Santiago,* 17 Conn. App. 273, 278–79, 552 A.2d 438 (1989) (constructive possession where drugs found in automobile); *State* v. *Melillo,* supra, 118 (constructive possession where drugs found in base of tree).

Further, it is well settled that if the contraband is found in a place where the defendant does not have exclusive possession, the presence of the defendant near the contraband without more is insufficent to support an inference of possession. See *State* v. *Alfonso,* supra, 634–35 (without supporting evidence, no inference could be made that the defendant possessed the marihuana found in the common area of an apartment). Under such circumstances, the state must offer some additional evidence that would tend to buttress an inference of possession. Id.

We consider this proof requirement to hold true especially where, as here, the contraband was found in a public area. Unlike contraband found either in an automobile with multiple passengers or in a shared premises, contraband found in a public area could have been secreted there by virtually anyone. It would be a frightening scenario indeed for a person to be prosecuted for a possessory offense simply because he was unfortunate enough to be in the wrong public area at the wrong time, that is, in the proximity of contraband when a police officer discovers it. To mitigate the possibility that innocent persons might be prosecuted for such possessory offenses and to assure that proof exists beyond a reasonable doubt, it is essential that

the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband. See, e.g., *State* v. *Thompson,* 20 Conn. App. 290, 291–93, 567 A.2d 837 (1989) (evidence sufficient to attribute possession of cocaine found underneath an abandoned car to a defendant who, while under surveillance, repeatedly picked up something underneath the car and exchanged items with persons who stopped nearby in waiting vehicles); *State* v. *Melillo,* supra, 116–18 (evidence sufficient to attribute possession of cocaine found at the base of a tree to a defendant who, while under surveillance, was observed walking directly to the tree and moving around it).

In order to establish a possessory connection for drugs found in a public place, the state need not, of course, show that the defendant was under continuous surveillance as in *Thompson* and *Melillo*. If a person is observed by a police officer discarding a package of some sort, and the officer then determines that the abandoned property is contraband, such evidence, although admittedly not as strong as that obtained in a continuous surveillance case, would nevertheless pass muster for purposes of denying a motion for judgment of acquittal. See, e.g., *State* v. *Ruth,* 16 Conn. App. 148, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989) (observing a defendant discarding objects, which turned out to be contraband, near a dumpster in the course of a pursuit on foot). Cf. *State* v. *Jennings,* 19 Conn. App. 265, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989) (observing a defendant discarding a brown paper bag after having seen a marked police car was sufficient to justify an investigative stop of the defendant and retrieval of the bag).[6]

---

[6] Narcotics possession cases hinging on the testimony of police officers who see a defendant drop something that is later determined to be narcotics or some other contraband are known as "dropsy" cases. See *State*

After carefully reviewing this record in the light most favorable to sustaining the verdict, we conclude that, given the insufficiency of the evidence concerning the element of possession, the state has failed, as a matter of law, to introduce sufficient evidence for the jury to reasonably have found beyond a reasonable doubt that the defendant possessed the contraband. The court, therefore, should not have denied the defendant's motion for judgment of acquittal. Significantly, the state produced no testimony that established that either officer actually witnessed the defendant discarding anything as he was bent over. The testimony viewed in its best light toward sustaining the verdict was that the defendant bent down *as if* he were dropping something.[7]

v. *Kimbro,* 197 Conn. 219, 227 n.11, 496 A.2d 956 (1985). As the defendant notes, this type of testimony has been criticized by the New York courts because an officer may offer fabricated "dropsy" testimony in order to avoid having the evidence suppressed as the fruit of an illegal search and seizure. See *People* v. *McMurty,* 64 Misc. 2d 63, 314 N.Y.S.2d 194 (1970). We decline, however, to depart from the long standing rule that witness credibility, including that of a police officer, is within the province of the jury. *State* v. *Osman,* 21 Conn. App. 299, 303, 573 A.2d 743 (1990). "[I]t would be a dismal reflection on society to say that when the guardians of its security are called to testify in court under oath, their testimony must be viewed with suspicion." *Bush* v. *United States,* 375 F.2d 602, 604 (1967).

[7] Sherbo had testified that he saw the defendant "bend down over to the side, down towards the ground bending over, arm outreached and . . . come back up." He further testified that "he was down to the ground and came back up, took a step to the side all within a couple of—three feet either way. He didn't walk anywhere." On cross-examination, he stated that he was "sure he bent down and sure the narcotics were found next to where he bent." Craw, on the other hand, never saw the defendant bending. His testimony was limited to what Sherbo had told him as the events transpired. Craw testified on direct examination that he "started checking the area, on the ground and found some narcotics. Joe said he had seen—Officer Sherbo said he had seen Brunori bend down and *looked like* he had thrown something when we first pulled up." (Emphasis added.) On cross-examination, he stated that he "didn't [think it was the defendant's drugs] until Mr. Sherbo said it was. He said he had seen Mr. Brunori throw something to the ground." Craw's latter statement on cross-examination contradicted both Sherbo's own testimony and Craw's earlier testimony on direct. This one brief statement is insufficient to overcome the otherwise uncontradicted testimony that Sherbo never saw the defendant discarding anything.

There is not a scintilla of evidence in the record to support the state's first inference that the defendant was at Father Panik Village to buy drugs. We cannot accept the state's implication that the defendant's walking on a sidewalk in a high crime area gives rise to an inference that he is there to buy drugs.

With regard to the state's second claimed inference—that the defendant was warned that a police car was approaching—Pirrelo testified that he turned around and "told Roger there's a police car." There is nothing in Pirrelo's testimony that warrants the state's characterizing this testimony as a "warning" to the defendant. After Pirrelo witnessed the police car driving toward them, it is hardly surprising, and certainly cannot be considered suspicious, that he mentioned it to his companion.

The state's two remaining inferences at least facially give some support for the ultimate inference of possession, but they too are legally insufficient to support guilty verdicts. We cannot agree with the state that the defendant's bending over and attempting to walk away while in a public area are probative in supporting an inference of possession. Surely, the innocuous act of bending over on a public sidewalk cannot be given any weight. Possession cannot be established by evidence of a movement that may have been performed for a multitude of reasons. The possibility that the defendant here *may* have discarded narcotics is not enough. In addition, the fact that the defendant started walking as the patrol car was arriving was no more suspicious than if he had instead elected to "freeze." No matter what the defendant did at this point, the state, no doubt, could have argued that some inculpatory inference could be drawn from his movements. Again, the possibility that the defendant *may* have been attempting to walk away from the discarded contraband is not enough.

We are well aware that "[w]here a group of facts [is] relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard." *State* v. *McDonough,* 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Had the state offered, as a factual predicate to establish possession, evidence that the defendant had discarded something, an inference of possession could have reasonably been drawn. In the absence of any testimony that the defendant was actually observed discarding something, we conclude that state failed to offer sufficient evidence for a jury reasonably to have found that the defendant possessed the contraband.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty of the crimes charged.

In this opinion the other judges concurred.