STATE OF CONNECTICUT *v.* RAYMOND SERRANO
(AC 29443)

Lavine, Beach and Lavery, Js.

Argued January 8—officially released September 7, 2010

*Roy S. Ward*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Patrick J. Griffin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Raymond Serrano, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On appeal, the defendant claims that (1) the trial court violated his sixth amendment right of confrontation by admitting several hearsay statements into evidence and (2) there was insufficient evidence to prove beyond a reasonable doubt that he attacked and intended to cause serious physical injury to the victim. We disagree and, accordingly, affirm the judgment of the court.

The jury reasonably could have found the following facts. On the evening of August 2, 2005, in the city of Waterbury, the defendant and David Seekins, the victim, were arguing in a yard shared by several homes. Shortly before 10:30 p.m., the defendant brandished a blunt object. Donna Franco, the defendant's roommate, also was standing in the yard. She implored the defendant not to strike the victim. At least two of the defendant's neighbors, Jonathan Mendez and Daniel Medina, overheard Franco's pleas. Mendez heard Franco say either, "don't do it," or, "don't hit it," while Medina heard Franco say, "stop hitting him, you don't have to do that, don't hit him, you're going to kill him."

At some point thereafter, the defendant struck the victim on the head with the blunt object at least three times. Two of the defendant's neighbors, Mendez and

Juana Ramirez, along with Jorge Reyes, a guest of Ramirez, saw the defendant attack the victim.

Law enforcement and emergency medical personnel arrived on the scene shortly thereafter and rushed the victim to a hospital. Upon the victim's arrival at the hospital, members of the trauma service observed that the victim had sustained several facial injuries.

Sun Yung Waitze, a plastic and reconstructive surgeon, first examined the victim approximately two days after he was admitted to the hospital. Waitze noted that the left side of the victim's head "had the most deformity" and asked the victim how he had been injured. The victim responded that he had been struck on the head with an unidentified blunt object. After completing his examination, Waitze concluded that the victim's injuries were serious enough to require surgery. Consequently, less than two weeks after the examination, Waitze performed surgery on the victim.

On the basis of the information provided by Waitze and the other witnesses, the defendant was arrested, tried before a jury and convicted of assault in the first degree. On June 1, 2007, the defendant was sentenced to an effective prison term of ten years, with a five year mandatory minimum to serve, execution suspended after seven years, and five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence a series of testimonial hearsay statements in violation of his rights under the confrontation clause of the sixth amendment. Specifically, he contends that the court improperly admitted into evidence: (1) Franco's statements immediately before the victim was attacked, as relayed through the testimony of the defendant's neighbors, Mendez and Medina; (2)

the victim's statement to Waitze regarding the cause of his injuries; and (3) Medina's testimony that he heard an unknown person call out the name "Raymond" approximately one minute after the attack, despite the court's curative instruction ordering the jury to disregard that portion of Medina's testimony and striking the word "Raymond" from the record. We disagree.

We first set forth relevant principles of law and our standard of review. "Under *Crawford* v. *Washington*, [541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence. . . . Thus, the threshold inquiry for purposes of the admissibility of such statements under the confrontation clause is whether they are testimonial in nature. Because this determination is a question of law, our review is plenary." (Citation omitted.) *State* v. *Slater*, 285 Conn. 162, 169–70, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

"Although . . . there is no comprehensive definition of testimonial, it is clear that much of the [United States] Supreme Court's and our own jurisprudence applying *Crawford* largely has focused on the reasonable expectation of the declarant that, under the circumstances, his or her words later could be used for prosecutorial purposes." (Internal quotation marks omitted.) Id., 172. With these principles in mind, we turn to the defendant's arguments.

## A

The defendant claims that the court committed reversible error by allowing into evidence testimony

from the defendant's neighbors regarding several witness statements relating what Franco allegedly said immediately before the victim was attacked. Specifically, the defendant claims that these statements are testimonial in nature and, therefore, inadmissible under the rule announced in *Crawford* v. *Washington*, supra, 541 U.S. 36. We disagree.

The following additional facts and procedural history are relevant to our resolution of this issue. Before trial, defense counsel filed a motion in limine to preclude the introduction of hearsay evidence.[1] During pretrial argument on the motion, defense counsel contended that the testimony of the state's witnesses would likely include inadmissible hearsay statements. The court determined that it needed to hear the disputed evidence before issuing a ruling and requested that the issue be raised again during the presentation of the evidence. Despite the delay, the court never ruled on the motion in limine.

The state placed Franco under subpoena, yet she failed to testify at trial.[2] Both Mendez and Medina testified that Franco made several statements immediately before the victim was attacked. Mendez testified that he heard Franco say either, "don't do it," or, "don't hit it," immediately before he saw the defendant strike

---

[1] The defendant's motion in limine was generalized. It stated: "Pursuant to § 42-15 of the Connecticut Practice Book, the [d]efendant respectfully requests that this [c]ourt rule, prior to the [s]tate's witnesses testifying, including but not limited to lay witnesses, police officers and expert witnesses, about inadmissible hearsay statements. In support of this motion, the defendant states that the statements of the [s]tate's witnesses are wrought with inadmissible hearsay statements. To allow the state's witnesses to testify about these statements would result in a prejudicial impact upon the defendant's case. No previous similar motion has been filed."

[2] Apparently, Franco was in the courthouse at some point during the first day of trial. When she failed to appear the following morning, the court asked the prosecutor to search the courthouse for her. The prosecutor, however, was unable to locate her.

the victim. Defense counsel did not object to Mendez' testimony during direct examination by the prosecution but did object during redirect on the ground that it was inadmissible as hearsay. The court overruled defense counsel's objection noting that Franco's statement, as relayed by Mendez, already had been introduced into evidence during direct examination.

Medina, who did not see the defendant strike the victim, testified that he heard Franco say, "stop hitting him, you don't have to do that, don't hit him, you're going to kill him," immediately before he heard the sounds of a physical altercation. Defense counsel objected to Medina's testimony during direct examination by the prosecution on the ground that it was inadmissible as hearsay.[3] The court again overruled defense counsel's objection.

The circumstances of this case, viewed objectively, would not have led Franco reasonably to believe that her statements later could be used for prosecutorial purposes. See *State* v. *Slater*, supra, 285 Conn. 177. Franco made the disputed statements without any degree of solemnity or reflection immediately before the defendant attacked the victim. Therefore, Franco reasonably could not have expected that she was bearing witness against the defendant when she implored him not to attack the victim. Because her statements were nontestimonial in nature, the confrontation clause of the sixth amendment was not implicated. See *Davis* v. *Washington*, 547 U.S. 813, 823–24, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Accordingly, we next turn to our rules of evidence to determine whether the court properly admitted the

---

[3] In light of the discussion between the court, the prosecutor and defense counsel prior to the introduction of witness testimony, as well as the circumstances surrounding defense counsel's objection at trial, we conclude that the defendant adequately preserved this issue for appeal.

testimony regarding Franco's nontestimonial statements. See *State* v. *Slater*, supra, 285 Conn. 178. Because Franco's statements were nontestimonial and this is not an issue of constitutional magnitude, we review the court's admission of Franco's statements, as relayed through the testimony of Mendez and Medina, under the abuse of discretion standard. See *State* v. *Saucier*, 283 Conn. 207, 219, 926 A.2d 633 (2007). "Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. . . . The trial court has broad discretion in making that factual determination, which will not be disturbed on appeal absent an unreasonable exercise of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 42, 770 A.2d 908 (2001).

Section 8-3 (2) of the Connecticut Code of Evidence provides that a spontaneous utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A hearsay statement is admissible as a spontaneous utterance when "(1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." *State* v. *Kelly*, supra, 256 Conn. 41–42; see also *State* v. *Slater*, supra, 285 Conn. 179.

Here, all four requirements were satisfied. The defendant was preparing to attack the victim, and Franco's statements clearly referred to that frightening occurrence. The testimony of Mendez; Medina; and two other neighbors, Ramon Serrano, the defendant's father, and Ramirez; as well as Reyes, a guest of Ramirez, placed Franco at the scene of the attack. Mendez and Medina

testified that Franco sounded loud and agitated when she implored the defendant not to strike the victim. Moreover, they testified that Franco made the disputed statements immediately before the defendant attacked the victim. Therefore, Franco's emotional state indicates that her statements were made under circumstances that negated an opportunity for deliberation or fabrication. See *State* v. *Slater*, supra, 285 Conn. 179–80 (circumstances surrounding victim's statement to passersby immediately after sexual assault would not lead victim reasonably to believe statement would be used at trial). For these reasons, we conclude that the court did not abuse its discretion in admitting Franco's statements through the testimony of Mendez and Medina.

Even if we were to conclude that the admission of Franco's statements through the testimony of Mendez or Medina was improper, the defendant still could not prevail. The jury was presented with ample evidence of the defendant's guilt, including the testimony of three eyewitnesses who saw the defendant strike the victim with a blunt object. See *State* v. *Thomas*, 98 Conn. App. 384, 388, 909 A.2d 57 (2006) (concluding defendant could not prevail in light of ample evidence of guilt even if court abused discretion in admitting statement as spontaneous utterance), cert. denied, 281 Conn. 906, 916 A.2d 47 (2007).

B

The defendant next claims that the court improperly admitted into evidence Waitze's testimony regarding the victim's statement to him concerning the instrument that caused the victim's injuries. We reject this claim.

The following additional facts and procedural history are relevant to our resolution of this issue. The victim did not testify at trial. Waitze testified that he treated the victim approximately two days after the victim was admitted to the hospital. Furthermore, Waitze testified

that, as a surgeon, it was important for him to understand what caused the victim's injuries in order to provide the victim with effective medical treatment. The victim told Waitze that he had been beaten with a blunt object, although he was not sure of the exact nature of the object. Defense counsel objected to Waitze's testimony on the ground that it was inadmissible as hearsay. The court overruled defense counsel's objection and admitted the victim's statement under the medical treatment exception to the hearsay rule.

We first must determine whether the victim's statement to Waitze was testimonial in nature. The circumstances of this case, viewed objectively, would not have led the victim reasonably to believe that his statement to his treating physician would be used later for prosecutorial purposes. Rather, the nature of the victim's statement, and the context in which it was elicited, make it clear that the victim reasonably expected that he was providing Waitze with information that would enable Waitze to provide the victim with proper medical treatment. See *State* v. *Slater*, supra, 285 Conn. 183–86. The victim's statement to Waitze did not identify the assailant or reveal any detail of the crime unrelated to medical treatment. Accordingly, we conclude that the victim's statement to Waitze was nontestimonial in nature.

Therefore, we must turn to our rules of evidence to determine whether the court properly admitted the victim's statement to Waitze. Because this is not an issue of constitutional magnitude, we review pursuant to the abuse of discretion standard the court's determination that the victim's statement was admissible under the medical treatment exception to the hearsay rule. See *State* v. *Arroyo*, 284 Conn. 597, 635 n.23, 935 A.2d 975 (2007).

Section 8-3 (5) of the Connecticut Code of Evidence provides an exception to the hearsay rule for "[a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." As we previously have stated, the victim's statement to Waitze was related to his injuries and the general character of their cause. Therefore, we conclude that the court did not abuse its discretion in admitting the victim's statement to Waitze under the medical treatment exception to the hearsay rule.

## C

Finally, the defendant claims that the court's curative instruction ordering the jury to disregard Medina's testimony that he heard someone say the name "Raymond," as well as the court's order that the name "Raymond" be stricken from the record, was deficient. We disagree.

The following facts and procedural history are relevant to our resolution of this issue. At trial, Medina testified that he overheard an unknown person call out the name "Raymond" approximately one minute after he heard the sounds of a physical altercation. Defense counsel objected to Medina's testimony on the ground that it was inadmissible as hearsay. Initially, the court overruled defense counsel's objection. The court, however, later reversed itself and issued a curative instruction, ordering the jury to disregard Medina's testimony that he heard someone call out the name "Raymond." The court also ordered that the name "Raymond" be stricken from the record.[4]

---

[4] The court issued the following curative instruction to the jury: "Ladies and gentlemen, the witness has testified . . . that a minute or so after certain things transpired, to which he's also testified, he heard the word Raymond. . . . I'm ordering that that testimony, which is one word, Raymond, be . . . stricken and that you disregard it."

It is well settled that "[a]bsent evidence to the contrary, a jury is presumed to have followed the court's instructions." *State* v. *Banks*, 117 Conn. App. 102, 119, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009). The defendant has presented no information to rebut that presumption. We conclude, therefore, that the court's curative instruction was followed.

## II

The defendant's final claim is that the evidence adduced at trial was insufficient to support his conviction. Specifically, the defendant claims that the evidence was insufficient to support a reasonable finding by the jury that he (1) was the assailant or (2) intended to cause serious physical injury to the victim. We disagree.

We begin by setting forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bowens*, 118 Conn. App. 112, 118–19, 982 A.2d 1089 (2009), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010).

"Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Garcia*, 81 Conn. App. 294, 305, 838 A.2d 1064 (2004).

We note that "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Bowens*, supra, 118 Conn. App. 119. With these principles in mind, we again turn to the defendant's arguments.

A

The defendant claims that the state presented insufficient evidence to prove that he attacked the victim. He cites a number of alleged inconsistencies and contradictions in the testimony of the witnesses at trial in support of his claim. We are not persuaded.

"[A]s an appellate court, we do not act as a finder of fact capable of rendering judgment on the basis of some feeling of doubt of guilt perceived from the printed record. Instead, we must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 117 Conn. App. 150, 154, 978 A.2d 99 (2009).

From the evidence presented at trial and the reasonable inferences that could have been drawn therefrom, we conclude that the state produced ample evidence to prove that the defendant was the assailant. Three eyewitnesses, Mendez, Ramirez, and Reyes, testified that they saw the defendant strike the victim. The defendant attacks the credibility of these witnesses on the ground that their testimony was rife with inconsistencies and contradictions. Yet, it is the exclusive province of the jury, not this court, to weigh conflicting evidence and to assess the credibility of these witnesses. See id.

The other eyewitness, the defendant's father, testified that the defendant was at the scene but that the victim already had been injured. The jury was free to juxtapose his version of events, however, with those of the other witnesses and to discount his credibility as it deemed fit. See id. We conclude, on the basis of the cumulative effect of the evidence, that the state produced ample evidence from which a rational jury could have determined that the defendant was the assailant.

B

The defendant further claims that the state presented insufficient evidence to prove that he acted with the requisite intent in causing the victim's injuries. Specifically, he claims that no reasonable jury could have found that he intended to cause serious physical injury to the victim. We are not persuaded.

Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . ." Thus, "[a]ssault in the first degree is a specific intent crime. It requires that the criminal actor possess the specific intent to cause serious physical injury to another person." (Internal quotation marks omitted.) *State* v. *Sivak*,

84 Conn. App. 105, 110, 852 A.2d 812, cert. denied, 271 Conn. 916, 859 A.2d 573 (2004).

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. . . . [T]he [jury is] not bound to accept as true the defendant's claim of lack of intent or his explanation of why he lacked intent. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, 114 Conn. App. 738, 744–45, 971 A.2d 63, cert. denied, 293 Conn. 901, 975 A.2d 1277 (2009).

In light of the evidence presented at trial and the reasonable inferences that could have been drawn therefrom, we conclude that the state produced sufficient evidence from which the jury reasonably could have found that the defendant intended to cause serious physical injury to the victim. The jury reasonably could have found that the defendant and the victim initially engaged in a heated verbal argument. Moreover, the jury reasonably could have found that the defendant, armed with a blunt object, then struck the victim on the head with that object at least three times. The jury also reasonably could have found that the victim sustained several serious injuries, including various skull fractures. Therefore, on the basis of the cumulative

effect of all of the evidence, the jury reasonably could have found that the defendant intended to cause serious physical injury to the victim by repeatedly striking him on the head with a blunt object.

The judgment is affirmed.

In this opinion the other judges concurred.