STATE OF CONNECTICUT *v.* LASCELLES
ANTHONY CLUE
(AC 33365)

DiPentima, C. J., and Robinson and Pellegrino, Js.

Argued September 10—officially released November 20, 2012

*Kevin Murray Smith*, with whom, on the brief, was *Daniel M. Erwin*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese L. Hodge*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Lascelles Anthony Clue, appeals from the judgments of conviction, rendered following a court trial on four informations consolidated for trial, of home invasion in violation of General Statutes § 53a-100aa, robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a) (1), threatening in the

second degree in violation of General Statutes § 53a-62, larceny in the fifth degree in violation of General Statutes § 53a-125a and possession of marijuana in violation of General Statutes § 21a-279 (c).[1] On appeal, the defendant claims that (1) there was insufficient evidence to sustain his convictions because the eyewitness identification evidence was improperly admitted into evidence at trial and/or was not sufficient to establish his guilt beyond a reasonable doubt, and (2) the court improperly admitted testimonial hearsay in violation of his rights under the confrontation clause of the sixth amendment to the United States constitution. We affirm the judgments of the trial court.

At the conclusion of trial, the court orally made the following findings on the record: On November 10, 2009, a man wielding a knife and wearing a black mask and black hooded sweatshirt entered the home of seventy-eight year old Dorothy Bogues. The man held the knife to Bogues' throat and demanded money. He told Bogues that he intended to harm her and specifically stated: "I'm going to kill you." After taking an envelope of money and a laptop computer, the man left Bogues' house.

"[A]lmost immediately upon the man's departure," Bogues called 911 and stated, inter alia, that she had been assaulted by a man wearing a black mask. Danbury police officers responded to Bogues' house shortly thereafter. During the course of their investigation into the incident, the police obtained search warrants for the defendant's home and vehicle.

When they searched the defendant's home, Danbury police found a bag containing the laptop taken from Dorothy Bogues' house. The bag—which police found hidden in an area of the defendant's basement only

---

[1] The court imposed a total effective sentence of fourteen years imprisonment followed by ten years of special parole.

accessible to the defendant and his girlfriend—also contained items identifying the defendant as the bag's owner. The police also searched the defendant's vehicle and found "items . . . corroborative of that which were indicated by Ms. Bogues" on the 911 call, including a black mask in the trunk of the car. Additionally, Danbury police found a bag of marijuana in the defendant's pocket when they conducted a patdown search.

At the conclusion of the trial, the court found the defendant guilty of home invasion, robbery, assault, threatening, larceny and possession of marijuana. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims that there was insufficient evidence at trial to sustain his conviction on the home invasion, assault and robbery charges. We are not persuaded.

The following facts, which the court reasonably could have found, and procedural history are also relevant to our resolution of the defendant's appeal. Dorothy Bogues was unavailable to testify at the defendant's trial in February, 2011, because she died on April 29, 2010. At trial, the state presented testimony from the Danbury police officer who received the 911 call from Dorothy Bogues, as well as two of the other Danbury police officers who first responded to her house to investigate the incident and collect evidence. The state also presented the testimony of Dorothy Bogues' son, Randall Bogues, who went to his mother's house after the incident at her request. Randall Bogues initially identified a man named Kevin Smith[2] as a potential suspect to police, based on his mother's description of her attacker and his knowledge of "Kevin Smith" as an

---

[2] Randall Bogues identified "Kevin Smith" in court as the defendant.

individual who lived close to Dorothy Bogues and had previously spent time at her house as a friend of Randall Bogues' nephew.[3]

The state also presented testimony from a Danbury police detective, Daniel Trompetta, who reported to Dorothy Bogues' house on the afternoon of the incident and then went to the defendant's address the next day to follow up on the information received from Randall Bogues. When Trompetta spoke with the defendant at his address, the defendant initially denied knowing Randall Bogues' nephew and anyone named Kevin Smith, and he denied that he used the name Kevin Smith. The defendant also told Trompetta that he was employed by the person who owned the building in which he lived. When Trompetta spoke with the building owner, however, he learned that the defendant, whom the building owner knew as Kevin, was not employed by the owner in any steady fashion.

After his conversation with the building owner, Trompetta obtained search warrants for the defendant's home and vehicle. Later that day, Trompetta and other Danbury police officers executed the search warrant at the defendant's home and found, among other things, a bag hidden in a basement cubbyhole. The bag contained a laptop with a serial number matching the serial number of Dorothy Bogues' laptop, as well as papers belonging to the defendant.

Also that day, the defendant was stopped while driving near his home so that officers could execute the search warrant on his vehicle. When officers searched the vehicle they found, among other things, a black hooded jacket and black mask in the trunk of the car.

---

[3] Randall Bogues' daughter, Stephania Bogues, also testified at trial regarding the defendant's prior visits to Dorothy Bogues' house, including the fact that the defendant would sometimes walk to Dorothy Bogues' house on foot.

Officers then arrested the defendant and took him into custody.[4]

Trompetta interviewed the defendant after he was taken into custody. During the interview, the defendant gave differing stories regarding his whereabouts on the day of the incident at Dorothy Bogues' house, and he admitted to previously lying to the detective about his knowledge of "Kevin Smith" and Randall Bogues' nephew. The defendant also denied having Dorothy Bogues' laptop in his home, but then changed his story to say that he purchased the laptop the day before the police found it, i.e., the day it was stolen, from a "crack-head named Milky." The defendant further indicated to Trompetta that all the items found during the search of the vehicle were his. When Trompetta confronted the defendant regarding the invasion of Dorothy Bogues' home, the defendant "was very calm" and said, "do you have physical evidence; prove it."

At trial, the court admitted into evidence, among other things, the recording of Dorothy Bogues' 911 call, as well as a knife found outside her home, the bag in which the police found her laptop, the items seized from the defendant's car and the baggie of marijuana found in the defendant's pocket.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the

[4] The defendant was arrested for possession of marijuana, which police found in his pocket during a patdown search conducted after they stopped the defendant's vehicle.

[finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Eubanks*, 133 Conn. App. 105, 110, 33 A.3d 876, cert. denied, 304 Conn. 902, 37 A.3d 745 (2012).

As a preliminary matter, the defendant contends generally that the evidence was insufficient to convict him because the trial court improperly admitted the tape and transcript of the 911 call into evidence. According to the defendant, the 911 call is the "only piece of evidence" that establishes that the charged crimes occurred, and without it, he should be acquitted. As we discuss in part II of this opinion, however, the trial court did not err in admitting the tape and transcript of the 911 call into evidence, and the contents of the call were before the court appropriately.[5] We therefore reject the defendant's evidentiary sufficiency claims to the extent that they are based on the impropriety of the admission of the 911 call.

The defendant also challenges his conviction because the statutes at issue require the perpetrator to be in the presence of the victim at the time he physically

---

[5] Even assuming arguendo that the trial court had improperly admitted the tape and transcript of the 911 call into evidence, this would not affect our evidentiary sufficiency analysis. A claim of insufficiency of the evidence "must be evaluated by considering all the evidence adduced at trial, even evidence subsequently determined to have been improperly admitted." *State* v. *Carey*, 228 Conn. 487, 494, 636 A.2d 840 (1994).

threatens or harms the victim.[6] He contends that the evidence presented at trial was insufficient to link him to Dorothy Bogues' house, and, therefore, to identify him as the perpetrator of the crimes. We disagree.

Although the defendant claims that Randall Bogues' "post facto speculation" regarding the identity of his mother's assailant "was the only thing linking the defendant" to Dorothy Bogues' house on November 10, 2009, this assertion ignores the other evidence presented at trial, including: (1) the November 10, 2009 recording of the 911 call indicating that Dorothy Bogues had just been robbed at knifepoint by a man in a black hooded sweatshirt wearing a black mask, who took money and a laptop computer and left her house on foot; (2) testimony establishing that the defendant lived a short distance away from Dorothy Bogues, was familiar with her and her home, and occasionally walked to her house; (3) testimony regarding the police investigation into the defendant and the defendant's lies regarding his identity and whereabouts on the day of the incident; (4) testimony that police found Dorothy Bogues' laptop computer hidden in the defendant's basement in a bag containing other items belonging to the defendant and

---

[6] Specifically, under General Statutes § 53a-100aa (a), "[a] person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense . . . commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling, or . . . is armed with explosives or a deadly weapon or dangerous instrument."

Pursuant to General Statutes § 53a-61a (a) (1), a person is guilty of assault of an elderly person in the third degree when the person commits assault in the third degree and "the victim of such assault has attained at least sixty years of age . . . ."

Finally, a person is guilty of robbery in the first degree under General Statutes § 53a-134 (a) (3) "when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . uses or threatens the use of a dangerous instrument . . . ."

(5) the black hooded jacket and black mask found in the trunk of the defendant's car.

On the basis of the evidence presented, the court reasonably could have found beyond a reasonable doubt that the defendant entered Dorothy Bogues' home on November 10, 2009, that he held a knife to her throat and demanded money, and that he took money and a laptop from her home. Accordingly, we reject the defendant's argument that the evidence was insufficient to convict him of home invasion, assault and robbery.

## II

The defendant also claims that the court improperly admitted into evidence testimonial hearsay statements in violation of his rights under the confrontation clause of the sixth amendment. Specifically, he asserts that the court erred in admitting: (1) the tape and transcript of the 911 call Dorothy Bogues made to the Danbury police and (2) Randall Bogues' identification of the defendant as his mother's assailant and his testimony at trial regarding his mother's description of her attacker. We disagree.

We begin by setting forth the relevant legal principles and our standard of review. "Under *Crawford* v. *Washington*, [541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence. . . . Thus, the threshold inquiry for purposes of the admissibility of such statements under the confrontation clause is whether

they are testimonial in nature. Because this determination is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Serrano*, 123 Conn. App. 530, 534, 1 A.3d 1277 (2010), cert. denied, 300 Conn. 909, 12 A.3d 1005 (2011).

The inquiry into whether a particular hearsay statement is testimonial in nature focuses "on the reasonable expectation of the declarant that, under the circumstances, his or her words later could be used for prosecutorial purposes." (Internal quotation marks omitted.) Id.; see also *State* v. *Rivera*, 268 Conn. 351, 363–64, 844 A.2d 191 (2004) (noting "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are traditionally considered testimonial hearsay [internal quotation marks omitted]).

## A

The defendant first claims that the court committed reversible error by allowing into evidence the tape and transcript of Dorothy Bogues' 911 call to the Danbury police. According to the defendant, because Dorothy Bogues made the call after the assailant fled her home, there was no ongoing emergency, and her statements on the call therefore were inadmissible testimonial hearsay. We are not persuaded.

The following additional facts, which the court reasonably could have found, and procedural history are relevant to this issue. At approximately 3:25 p.m. on November 10, 2009, Dorothy Bogues called 911 and reported to Danbury police officer Augusto Lowe that she was "just assaulted by a person that came in [her] door with a mask on; [who] took all [her] money." Dorothy Bogues stated, inter alia, that a man wearing a black mask and black hooded sweatshirt came into her house holding a knife; he held the knife to her

throat; he threatened her life and demanded money; and he left her house after taking an envelope of cash and her laptop computer. When Lowe indicated that officers were on their way to Dorothy Bogues' house and asked her for a "very good description so we can give these officers a description as they're going there," she indicated that the intruder "couldn't be very far" from her house because he was traveling on foot. She also told Lowe that she "wish[ed] [officers] would come," and she "[didn't] know what's gonna happen." She further told Lowe that she was scratched from the knife, and that she was "crippled" and "in a wheelchair" because she "can't walk very well." Lowe stayed on the call with Dorothy Bogues until officers came to her home; the call ended only when the officers arrived and began "checking the area."

The defendant moved to suppress the recording of the 911 call arguing that it was inadmissible testimonial hearsay, or, alternatively, was hearsay that did not fall under the excited utterance exception. The trial court denied the defendant's motion to suppress. The court concluded that Dorothy Bogues' statements on the 911 call were not testimonial in nature because the questions on the 911 call were intended to "elicit statements necessary in order to resolve the present emergency," rather than "to establish or prove past events." The court further found that Dorothy Bogues' recounting of the attack on the 911 call satisfied the requirements for admission as an excited utterance.[7]

The defendant asserts that the 911 call contained testimonial hearsay, and that the court improperly admitted the tape and transcript of the 911 call into

---

[7] The defendant has not challenged the court's ruling that Dorothy Bogues' statements on the 911 call were admissible under the excited utterance exception to the hearsay rule, and, therefore, we will not review this evidentiary determination.

evidence in violation of his rights under the confrontation clause. We disagree. In *Davis* v. *Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the United States Supreme Court articulated a test for determining whether statements to police are testimonial, stating that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

The United States Supreme Court recently provided further guidance into the "ongoing emergency" component of the primary purpose inquiry, in *Michigan* v. *Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011). The court noted that "whether an emergency exists and is ongoing is a highly context-dependent inquiry" that should include, inter alia, objective consideration of (1) the scope of the emergency, or, in other words, whether the emergency threatens the police and public as opposed to merely the initial victim; (2) the type of weapon employed and (3) the medical condition of the declarant. Id., 363–65. This inquiry must focus objectively on the perspective of the parties at the time of the interrogation. Id., 361 n.8. "If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the [c]onfrontation [c]lause." Id. As the court in *Bryant* further noted, the formality or informality of the interaction between the

declarant and the police can also be useful in determining the primary purpose of the encounter. Id., 366.[8]

When Dorothy Bogues called 911, all that she and Lowe knew was that (1) she had just been robbed at knifepoint in her home by a masked man and (2) the knife-wielding assailant had just fled her home on foot and "couldn't be very far" away. The unknown whereabouts of a disguised individual armed with a dangerous weapon presented a threat that extended beyond Dorothy Bogues and her home—it threatened the safety of others in the vicinity, including police who were responding to the scene of the crime. See *Michigan* v. *Bryant*, supra, 562 U.S. 363–64.

Additionally, Lowe's questions during the 911 call were directed explicitly toward resolving the emergency situation and ascertaining whether Dorothy

---

[8] The defendant argues that *Bryant* is inapposite because the defendant in that case murdered the declarant with a gun, whereas the present case is not a murder case and involves a knife instead of a firearm. In lieu of using *Bryant*'s guidance on what constitutes an "ongoing emergency," the defendant instead urges us to draw a line at Dorothy Bogues' door and conclude that once the intruder stepped outside her house, any emergency ceased. We reject this assertion. *Bryant* made clear that emergency situations can extend beyond the initial victim and pose a threat to police and the public, and that the determination of whether an emergency situation exists is highly context-driven. *Michigan* v. *Bryant*, supra, 562 U.S. 363. We therefore decline to adopt the rigid test the defendant proposes. We also reject the defendant's argument that *Davis* should guide our analysis instead of *Bryant* because *Davis* provides a more closely analogous fact pattern to the present case. *Davis* involved a domestic disturbance during which the victim called police while a known assailant beat her with his fists and then fled the scene. *Davis* v. *Washington*, supra, 547 U.S. 817–18. In contrast to the declarant in *Davis*, Dorothy Bogues called 911 to inform police that an unknown, disguised, knife-wielding man had just left her home on foot after threatening her life and robbing her. The masked intruder in the present case was an unknown quantity whose presence outside Dorothy Bogues' home continued to pose a potential threat to the public and responding police officers. See *Michigan* v. *Bryant*, supra, 364–65 (contrasting *Bryant* and *Davis* and noting differences between scope and duration of emergency in domestic violence cases and nondomestic disturbances).

Bogues was injured and/or needed assistance, and Bogues' answers likewise centered on providing Lowe with his requested information and ensuring that police would arrive to further assist her.[9] See id., 367–68 (noting that "[i]n many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers"). Neither Lowe nor Dorothy Bogues had any indication at any point during the call that the emergency situation had subsided—she stated that she "[didn't] know what's gonna happen," and Lowe only ended the call when he knew that officers had arrived on the scene and were checking the area for the assailant. See *Michigan* v. *Bryant*, supra, 562 U.S. 365 (noting that conversations can evolve from nontestimonial to testimonial "if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency").

Viewing the circumstances of the 911 call objectively, as we must, we conclude that nothing in the context or content of the call reasonably would have suggested to Dorothy Bogues that her statements made during the call would be used to establish or prove events in a later prosecution of the man who had just broken into her house and robbed her at knifepoint. See *Davis* v. *Washington*, supra, 547 U.S. 822; *State* v. *Serrano*, supra, 123 Conn. App. 534. Rather, the primary purpose of the 911 call was to enable Lowe to obtain from Dorothy Bogues the information necessary to meet an ongoing emergency, and her statements on the 911 call thus were not testimonial hearsay.[10] Accordingly, the

___

[9] Lowe stated: "[W]e have officers coming right now, but what—I need a—a very good description so we can give these officers a description as they're going there." Dorothy Bogues described the intruder in response to Lowe's questions and stated, inter alia, "I wish [officers] would come."

[10] The informality of the 911 call, which occurred in the immediate aftermath of the incident and prior to the arrival of any police officers or medical personnel on the scene, further supports our conclusion that Dorothy Bogues' statements on the call were not testimonial hearsay. See *Michigan*

admission of the tape and transcript of the 911 call into evidence did not violate the defendant's rights under the confrontation clause, and we reject the defendant's first claim.

## B

The defendant next claims that the court improperly admitted into evidence testimony regarding (1) Randall Bogues' identification of the defendant as a potential suspect and (2) Dorothy Bogues' description of her attacker to Randall Bogues. The defendant asserts that Dorothy Bogues' description of her assailant was testimonial hearsay, and he contends that, because Randall Bogues identified the defendant to police based on his mother's description and testified about her description in court, the admission of these statements into evidence violated the defendant's right to confrontation. We are not persuaded.

The following additional facts, which the court reasonably could have found, and procedural history are relevant to our analysis. Randall Bogues went to his mother's house on November 10, 2009, following a telephone call from his mother. He testified at trial that when he arrived at his mother's house, there were officers inside the house speaking with his mother, and he went to check on her because she was "in need of attention." He indicated that he calmed his mother down and ensured that she "was being taken care of," and then went to speak to police officers outside her home. He testified that he provided the officers with

v. *Bryant,* supra, 562 U.S. 366, 377 (contrasting the "formal station-house interrogation" deemed testimonial in *Crawford* and noting that "the questioning in [*Bryant*] occurred in an exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion," and further stating that "the circumstances lacked any formality that would have alerted [the declarant] to or focused him on the possible future prosecutorial use of his statements").

information regarding his mother's stolen laptop computer, and that the officers asked him for his help identifying anyone "that could have possibly had a motive to do that to [his] mom." He further testified that he gave the police a description of the person he believed "fit the description that [his] mother had given [him]," and that he gave the police the name "Kevin Smith" as a potential perpetrator. According to Randall Bogues, Kevin Smith was a friend of his nephew, and he "had been known to come over to [Dorothy Bogues'] house stating that he wanted to go see [Randall Bogues' daughter]. When my daughter wasn't there, my mother would ask him to leave. At which point she would contact me, and I would insist that this individual leave the house because with my daughter not being there, there was absolutely no reason for that individual to be in that house or be near that house." Randall Bogues gave the police Kevin Smith's address and cell phone numbers.

During the state's examination, defense counsel did not object to Randall Bogues' testimony regarding either his conversation with his mother after he arrived at her house, or his identification of the defendant to the police. On cross-examination, Randall Bogues testified that when he arrived at his mother's house, he attended to his mother and comforted her "as a son" because she had just been through a harrowing experience and had never been robbed or threatened before. Defense counsel then questioned Randall Bogues regarding his identification of the defendant to police and asked him to confirm that his mother had provided him with a physical description of her assailant, including the attacker's height and weight. Defense counsel also questioned his knowledge of the defendant's relationship with his nephew and asked about time the defendant spent at Dorothy Bogues' house. On redirect examination, the state elicited further details regarding Dorothy Bogues' physical description of the attacker to her son,

including his height and presumed race, as well as the clothes he was wearing. Defense counsel did not object to any of this testimony.

Because the defendant did not object to Randall Bogues' testimony at trial, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Mish*, 110 Conn. App. 245, 256–57, 954 A.2d 854, cert. denied, 289 Conn. 941, 959 A.2d 1008 (2008). "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 240.

The defendant's claim fails under the first *Golding* prong because the record is inadequate for review. "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make

factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted). *State* v. *Riggsbee*, 112 Conn. App. 787, 791–92, 963 A.2d 1122 (2009).

Here, we cannot discern from the record the context in which Dorothy Bogues described her assailant to her son, and thus we have no way to assess adequately whether her statements were testimonial hearsay that implicated the defendant's rights under the confrontation clause. Specifically, although Randall Bogues indicated in his trial testimony that police officers were present at his mother's house and speaking to her when he arrived, the record does not indicate clearly whether officers remained with Dorothy Bogues while she spoke to Randall Bogues regarding her attacker, whether officers asked Randall Bogues to obtain information from his mother and serve as an intermediary between his mother and the police, whether Dorothy Bogues described her assailant to her son in response to specific questioning or whether she volunteered the information to him, or, alternatively, whether Dorothy Bogues simply described her attacker to her son while he was comforting her after a harrowing experience, wholly outside the context of a law enforcement investigation. We, therefore, cannot determine from the existing record whether Dorothy Bogues reasonably could have believed that her statements could be used in the eventual trial of her attacker; see *State* v. *Rivera*, supra, 268 Conn. 363–64; and we cannot try to supplement or reconstruct the record to decide the defendant's claim. See *State* v. *Riggsbee*, supra, 112 Conn. App. 792.

Because the record is inadequate for review, the defendant has failed to satisfy the first prong of the test set forth in *Golding*, and his claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.